CROSBY JOHNSON, Respondent, v. PHOENIX INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, February 15, 1897.

1. **Insurance**: CERTIFIED COPY OF BILLS: DEMAND. In order to make the failure to furnish certified copies of invoices of goods as required by the policy a matter of defense, the insurer should make demand for such copies; and the fact that copies, when furnished, are not certified to can not be taken advantage of for the first time at the trial.

2. ——: ARBITRATION: REFUSAL: PENDING SUIT. An insurer can not take advantage of the want of arbitration as provided by the policy when his refusal defeated such arbitration; and the fact that a former suit was pending on the policy at the time the offer to arbitrate was made can not alter the result.

3. ——: OFFER TO ARBITRATE: TOO LATE. Under the arbitration clause of an insurance policy either party could demand an arbitration; and the fact that the assured delayed to demand such arbitration can not defeat his rights unless such delay materially injured defendant and prejudiced the merits of the defense on the arbitration.

*Appeal from the Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Fyke, Yates & Fyke* for appellant.

(1) No recovery should have been permitted in this case because of the failure of assured, or her assignee, to offer to appraise the loss. The policy conditions on the subject are the same as in *Murphy v. Ins. Co.*, 61 Mo. App. 322; *McNees v. Ins. Co.*, 61 Mo. App. 335. (2)· The offer of assignee Durland to appraise while his suit on the policy was pending, does not help plaintiff, because Durland's right to recover depended on his having performed the conditions of

the policy before bringing his action. The company had the right to refuse without prejudice while it was being sued. (3) We further contend that an offer to appraise, even if otherwise unobjectionable, was not made within a reasonable time—ten months after loss. (4) The assured's disregard of the contract right given defendant, of inspecting certified copies of bills of purchases, is fatal to this case. *Logan v. Ins. Co.*, 29 Atl. Rep. 710; *Farmer's Co. v. Mispelhorn*, 50 Md. 180; *O'Brien v. Ins. Co.*, 63 N. Y. 108. (5) It stands admitted that the few bills procured by assured were not certified to. After repeated requests upon the part of the company, the assured refused to do anything further in the way of complying with this plain policy condition. Why does not this prevent recovery?

*Crosby Johnson* for respondent.

(1) On an appeal all doubts are to be resolved in favor of the finding of the trial court. *State v. Cunningham*, 100 Mo. 382; *Flynn v. City*, 114 Mo. 567. (2) The trial court should not be convicted of error on mere surmise or conjecture. *Miller v. Leeper*, 120 Mo. 466, 478; *Vaughn v. R. R.*, 34 Mo. App. 141. (3) Trial court can not be convicted of error in refusing a peremptory instruction in favor of either party, unless the entire evidence is brought before the appellate court. *Nelson v. Lock*, 59 Mo. App. 450; *City v. McCullum*, 58 Mo. App. 450; *Williams v. Webb*, 127 Mo. 150. (4) The offer to arbitrate was an offer to dismiss the suit then pending. *Bowen v. Lazalere*, 44 Mo. 383. (5) "An insurance company makes its own conditions and they will be interpreted most strongly against it." *Renshaw v. Ins. Co.*, 103 Mo. 595; May on Ins., secs. 174, 176; *Hale v. Ins. Co.*, 46 Mo. App. 508. (6) Naming one objection is an

exclusion of others. *Ex parte Snyder*, 64 Mo. 58, 61. (7) Harmless error is no ground for reversal. *Green v. City*, 106 Mo. 454; *Mitchell v. Bradstreet*, 116 Mo. 226, 244. (8) Invoices were only evidence of compliance with conditions of policy by insured. *Summers v. Ins. Co.*, 53 Mo. App. 521.

GILL, J.—Prior to April 2, 1893, a Mrs. Burkett conducted a millinery business at Breckenridge, Missouri. Her residence and store were in the same building. Her millinery stock and household goods were insured by the defendant—$500 on the former and $250 on the latter. At the date above STATEMENT. mentioned the building with the entire contents was destroyed by fire. Shortly after the fire Mrs. Burkett assigned her rights in the policy to one Durland, of Centralia, Kansas, who, it seems, was a creditor of Mrs. Burkett, and who took the claim in trust, agreeing to collect, and after paying $300 of the proceeds to Mrs. B., was to appropriate the remainder toward payment of his and another debt owing by Mrs. Burkett. It seems that the ordinary notice and proofs of loss were timely and properly given and made, but the adjusting agent raised some question as to the extent of the loss. About this time Mrs. Burkett and Durland secured the services of Mr. Johnson, a lawyer, and then followed a lengthy correspondence and negotiation for settlement, covering several months in time, resulting, however, in a disagreement and the institution of a suit of Durland against the insurance company. In answer to Durland's petition, the company set up a disagreement as to the amount of loss, and that there had been no appraisement or offer of arbitration, and that, therefore, under the terms of the policy, no suit could be maintained. Thereupon Johnson, acting for and in behalf of the assured

and her assignee in trust, made a written offer of arbitration to the company; but the same was declined, the company basing its refusal on the sole ground that an action was then pending in the name of Durland, and that such action could not be maintained until sixty days after an award of arbitration. The Durland suit was then dismissed; and Johnson, who had, with the consent of Mrs. Burkett, taken an assignment from Durland, then began the present suit.

In addition to the other and necessary allegations, the petition alleged compliance with all the terms of the policy. The defendant set up and relied on two defenses: *First*, that the assured failed and refused to furnish the company with certified copies of bills or invoices belonging to said millinery business, and *second*, that there was no arbitration as to the amount of loss as the policy required.

The issues were tried by the court sitting as a jury and resulted in a finding and judgment to this effect; that the household goods destroyed, and on which there was $250 insurance, were of the value of $493; and that the millinery goods destroyed, and on which the insurance was $500, were of the value of $800; and then finding that plaintiff and those through whom he claims had complied with and performed all conditions of the policy sued on, gave judgment for plaintiff for the amount named in the policy, to wit, $750 and interest.

From this judgment defendant appealed.

I. Since at the trial of this case no instructions were asked or given, save and except a demurrer to the evidence, it is our sole duty to determine whether or not the judgment of the circuit court on any theory within the issues of the pleadings, can be upheld.

The first defense set up in the answer is based on that provision of the policy which requires the assured,

INSURANCE: cer-
tified copy of
bills. demand.

if requested by the company, to "exhibit certified copies of all bills and invoices where originals have been destroyed." We fail to find in the evidence any just cause for complaint in this matter. In the first place there was no demand made for such certified bills and invoices. It is true that in the two letters from the defendant's special agent, the one to Mrs. Burkett and the other to Johnson, her attorney, some mention is made of a *refusal* to furnish these bills, but there is no evidence that such a demand was in fact ever made. But more than this, the proof is that the assured, after much effort, got together duplicate bills of substantially all purchases from the various wholesale houses with whom she had dealt and that her attorney forwarded the same to the company. It seems that these duplicate bills were not formally *certified* to, but yet the company received and examined the same without once objecting to the absence of certificates. The first objection of this nature was when such papers were offered as evidence at the trial. The company then clearly waived this imperfection in the duplicate bills and invoices. In other respects the bills and invoices were as required by the terms of the policy.

II. The second defense is equally destitute of merit. It is based on a provision of the policy which requires,

——: arbitration:
refusal: pending
suit.

in the event of a disagreement between the insurer and insured as to the amount of loss or damage, that the same be settled by arbitrators, each party selecting one and these two a third, and that no action should be brought on the policy until sixty days after proofs of loss, examinations, etc., and award of arbitrators. The policy here contains the same provisions as were passed on by us in the *Murphy* and *McNees* cases, 61 Mo. App. 323, 335; and it was there held that an appraisement or an

offer therefor by the plaintiff was a condition precedent to the right to sue.

Now, in this case there was, it is true, no appraisement as required by the policy, but it was because of the defendant's refusal to arbitrate. The evidence shows that on February 3, 1894, and before the present action was begun, the assured and those who represented her, made written request of the defendant that the matter of the extent of the loss be settled by appraisement as provided in the policy. But the defendant's agents and officers declined, and for the reason alone, as already stated, that an action on the policy was already pending, etc. But this was no valid excuse. The effect of an agreement then to arbitrate would have been to discontinue the action theretofore instituted; and hence the pendency of that action (shortly thereafter dismissed) was no obstacle in the way of an arbitration under the terms of the policy. *Bowen v. Lazalere*, 44 Mo. 383.

III. But it was further objected that the plaintiff's offer to arbitrate came too late—that it was delayed beyond a reasonable time. We do not think the defendant has any cause to complain of any delay in calling for an arbitration to settle this disagreement as to the amount of Mrs. Burkett's loss. Under the terms of the policy either party, the insurer or assured, had the right to call for an arbitration, either could move in this matter. Neither was compelled to await the action of the other; the calling for an arbitration was as much the privilege or duty of the one as the other. But as said in *McNees v. Ins. Co., post* 232, since, where there is disagreement an arbitration is a condition precedent to plaintiff's right to sue, he may be said to assume the perils of delay; and if such delay has been so extended as to materially injure or destroy the defend-

ant's means or facilities for exhibiting the merits of the defense to the arbitrators, then such delay might defeat plaintiff's action altogether.    But in the case in hand there is nothing to show. that the defendant was in any way injured or prejudiced by the delay in calling for the appraisement.

The judgment here is for the right party and will be affirmed.    All concur.